**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

|   |   |   |
|---|---|---|
| | : | |
| WILLIAM J. LOTIERZO, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 07-2674 (JAP) |
| | : | |
| v. | : | |
| | : | |
| COMMISSIONER OF SOCIAL | : | **OPINION** |
| SECURITY | : | |
| | : | |
| Defendant. | : | |

_____ :

APPEARANCES:

Matthew T. Rinaldo, Esq.
Rinaldo & Rinaldo Esqs.
1767 Morris Ave.
Suite 205
Union, NJ 07083
       *Attorney for Plaintiff*

Christopher J. Christie
United States Attorney
Vernon Norwood
Special Assistant United States Attorney
Social Security Administration
26 Federal Plaza, Room 3902
New York, NY 10278
       *Attorneys for Defendant*

PISANO, District Judge.

        This matter comes before the Court pursuant to Title II of the Social Security Act ("the

Act"), 42 U.S.C. § 405(g).  Plaintiff William J. Lotierzo ("Plaintiff" or "Lotierzo") seeks review

of the final decision of the Commissioner of the Social Security Administration

("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").  The issue

presented is whether the Commissioner's decision to deny Plaintiff's application for DIB is supported by substantial evidence.  Because the Court finds that the record provides substantial support for the Commissioner's denial, the Court affirms the Commissioner's decision.

## I.    BACKGROUND

### A.  *Plaintiff's Personal and Medical History*

Plaintiff was born June 9, 1962.  He has a high school level education which he earned by completing the tenth grade and passing the GED.  (Administrative Record ("R.") 419).  Plaintiff worked as a tractor trailer driver for his entire work history.  (*Id.*).  He worked as a truck driver for Federal Express until he was in an automobile accident on February 21, 2003.  The accident caused injuries to his knee, chest, and neck.  (R. 419-20).

Following this accident, on September 9, 2003, Plaintiff began treating with Dr. Ira Kasoff, a neurological surgeon.  Upon initial examination, Dr. Kasoff noted that Plaintiff's neck exhibited a fairly good range of motion.  (R. 164).  Dr. Kasoff ordered a cervical myelogram and a computerized tomography ("CT") scan in order to maximally define the problem.  (*Id.*).  On September 29, 2003, the cervical myelogram revealed small anterior epidural defects at the C3-4 and C4-5 levels with a larger defect at C5-6.  It also revealed mild to moderate narrowing of the central spinal canal at the C5-6 level.  (R. 373).  The CT scan revealed disc herniations at the C5-6 and C6-7 levels.  (R. 375).

On October 15, 2003, Dr. Kasoff performed an anterior cervical discectomy and fusion with anterior plating.  In his post-operative follow-up, although Plaintiff complained of pain in his neck and left upper extremity, Dr. Kasoff noted that Plaintiff was walking well and had fair mobility of his cervical spine.  (R. 156).  He found Plaintiff's neurological exam to be vastly improved and described Plaintiff as having "excellent strength in all muscle groups."  (*Id.*).  On

December 17, 2003, Dr. Kasoff noted that Plaintiff had excellent strength in all muscle groups and urged Plaintiff to seek employment.  (R. 379).  On January 30, 2004, Dr. Kasoff described Plaintiff as "doing beautifully" and further noted that Plaintiff was completely comfortable and had a normal neurologic exam.  Dr. Kasoff found Plaintiff was "free to return to work at this time."  (R. 378).  Dr. Kasoff stopped treating Plaintiff on that date.

On April 8, 2004, Dr. Ronald Bagner examined Plaintiff.  Dr. Bagner reported that Plaintiff ambulated without difficulty, got on and off the examining table without difficulty, was not uncomfortable in the seated position during the examination, and did not require a cane or other assistive device.  (R. 165).  Plaintiff demonstrated a normal range of movement in his upper extremities and had no motor or sensory abnormalities in the lower extremities.  (*Id.*).  Dr. Bagner, however, found that Plaintiff experienced pain upon moving his cervical region and that Plaintiff had a "patchy decrease in sensation in the left and right hand[s]."  (*Id.*).

Dr. Napjtali Britman assessed Plaintiff on April 21, 2004.  (R. 170).  Dr. Britman determined that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds.  Dr. Britman also found that Plaintiff could stand or walk for about 6 hours of an 8 hour work day and sit for 6 hours.  (R. 171).  The doctor also reported Plaintiff was not limited in push or pull exertions and had no postural, visual, communicative, or environmental limitations.  (*Id.*).

Dr. Nancy Brunner, a psychiatrist, examined Plaintiff on November 22, 2004.  (R. 178).  During the mental status examination, Dr. Brunner found Plaintiff's speech to be intelligible and fluent.  She observed that his thought processes were coherent and that he was oriented.  (R. 180).  His attention and concentration were intact, and so were his recent and remote memory

-3-

skills.  (R. 181).  She found his cognitive function to be average.  (*Id.*).  Nevertheless, the doctor noted Plaintiff's mood as sad and his affect as depressed.

Dr. Brunner determined that Plaintiff appeared capable of understanding and following simple instructions.  She also determined that Plaintiff was capable of performing simple and complex tasks independently and maintaining the attention necessary for the tasks.  Plaintiff could learn new tasks and make appropriate decisions.  (*Id.*).  Dr. Brunner found that Plaintiff's impairment was in his ability to interact appropriately with others and manage stress.  (*Id.*).  Ultimately, Dr. Brunner diagnosed Plaintiff with "Major Depressive Disorder, Recurrent, Moderate Dysthmic Disorder" and "Back pain[.]"

Dr. Rose Chan, an orthopedist, examined Plaintiff on November 22, 2004.  (R. 183).  Plaintiff told Dr. Chan that he was a truck driver who could no longer drive because he cannot sit for more than 20 minutes without experiencing neck pain.  He described the neck pain as constant and stated that he also had difficulty walking.  (*Id.*).  Plaintiff also told Dr. Chan that he is able to shower, bathe, and dress himself, as well as cook, shop, and care for his child.  (R. 184).  For entertainment, he watches TV, listens to the radio, reads, and goes out to the yard.  (*Id.*).

Dr. Chan observed that Plaintiff was not in acute distress and had a normal gait and stance, as well as a full squat.  (*Id.*).  Dr. Brunner observed that Plaintiff had a limited range of motion  ("ROM") in his cervical and lumbar spines, but had full ROM in his upper and lower extremities.  (R. 184-85).  Dr. Chan diagnosed Plaintiff with peripheral polyneurotherapy, cervical fusion with chronic neck pain, lumbar laminectomy with chronic low back pain, and feelings of depression.  (R. 185).  She gave Plaintiff a fair prognosis and determined he had a

mild limitation for lifting and activities which require frequent neck movement, but found no limitations for standing, walking, sitting, use of hands, or communication. (*Id.*).

Dr. M. C. Morog then performed a psychiatric review of Plaintiff on December 23, 2004, and determined that Plaintiff suffered from affective disorders of depression and dysthymia. (R. 191). Dr. Morog also found Plaintiff mildly restricted in daily living activities. (R. 188, 198). Additionally Plaintiff was found to have mild difficulty in maintaining social functioning and moderate difficulty in maintaining concentration, persistence, or pace. (R. 198). Plaintiff did not have repeated episodes of deterioration. (*Id.*).

Plaintiff then treated with Dr. Wadie Toma, a rheumatologist, from May through September of 2005. (R. 384). In each of his three examinations of Plaintiff, Dr. Toma observed that Plaintiff had a full range of motion in all of his joints and no synovitis. In his final examination, Dr. Toma diagnosed Plaintiff with fibromyalgia syndrome and prescribed Elavil and Voltaren. He also advised Plaintiff to exercise and increase his physical activities. (R. 384-389).

### B.  *Procedural History*

On October 22, 2003, Plaintiff first filed applications with the Social Security Administration ("SSA") to recover DIB, pursuant to Title II of the Act. (R. 72-73). The Commissioner denied the claim initially and upon reconsideration. (R. 34-41, 47-49). On February 22, 2005, Plaintiff filed a request for a hearing by an administrative law judge ("ALJ"). (R. 50-54).

Accordingly, a hearing was held before ALJ Joseph A. Pachnowski, at which Plaintiff appeared and testified on January 5, 2006. (R. 413-49). On February 24, 2006 ALJ Pachnowski issued an opinion denying Plaintiff's claim. (R. 22-32). ALJ Pachnowski found that Plaintiff

had the residual functional capacity to perform light work which existed in significant numbers in the national economy, and thus was not considered disabled under Sections 216(i) and 223 of the Act.  (R. 22-32).

Initially, the ALJ found that Plaintiff met the disability insured status requirements of the Act on February 21, 2003, the amended onset date,[1] and has not engaged in substantial gainful activity since that date.  (R. 31).  However, the ALJ found that, by January 2004, Plaintiff was able to perform a full, wide, and complete range of light work tasks.  (*Id.*).  The ALJ next found that the claimant's statements concerning back pain, neck pain, and an affective mental problem were not credible in light of discrepancies between Plaintiff's assertions and information contained in the documentary reports.  The ALJ ultimately determined that Plaintiff's ability to perform a full range of light work combined with his age, education, and work experience led to the conclusion that Plaintiff is "not disabled" under Grid Rule 202.20, as codified at 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.20.  (R. 32).  On April 13, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision.  (R. 5-8).

On June 7, 2007, Plaintiff filed the present complaint.  Plaintiff argues that the ALJ's denial of benefits was not based on substantial evidence because the ALJ placed too much emphasis on medical evidence and physicians' conclusions, and failed to give sufficient consideration to Plaintiff's subjective complaints of pain.  Additionally, Plaintiff challenges the ALJ's decision by submitting that the ALJ ignored his complaints concerning his lower back, which was operated on in 1997.  Finally, Plaintiff argues that the ALJ failed to consider the

---

[1] Plaintiff originally claimed the onset date of disability to be October 15, 2003, (R. 72), but later amended the date to be February 21, 2003, (R. 417).

combination of impairments suffered by Plaintiff, but, rather, concentrated on only Plaintiff's

most recent injuries caused by the February 21, 2003 accident.

## II.    DISCUSSION

### A.    *Standard of Review*

The standard under which the District Court reviews an ALJ decision is whether there is

substantial evidence in the record to support the ALJ's decision.  42 U.S.C. § 405(g); *Plummer v.*

*Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  "[M]ore than a mere scintilla," substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*,

305 U.S. 197, 229 (1938)) (internal quotation marks omitted).  The inquiry is not whether the

reviewing court would have made the same determination, but, rather, whether the

Commissioner's conclusion was reasonable.  *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir.

1988).  Substantial evidence, therefore, may be slightly less than a preponderance.  *See*

*Hanusiewicz v. Bowen*, 678 F. Supp. 474, 476 (D.N.J. 1988).

The reviewing court, however, does have a duty to review the evidence in its totality.

*See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).  As such, "a court must take into account

whatever in the record fairly detracts from its weight."  *Schonewolf v. Callahan*, 972 F. Supp.

277, 284 (D.N.J. 1997) (internal quotations omitted).  The Commissioner has a corresponding

duty to facilitate the court's review:  "[w]here the [Commissioner] is faced with conflicting

evidence, he must adequately explain in the record his reasons for rejecting or discrediting

competent evidence."  *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987).  As the Third

Circuit has instructed, a full explanation of the Commissioner's reasoning is essential to

meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently
> explained the weight he has given to obviously probative exhibits, to say that his
> decision is supported by substantial evidence approaches an abdication of the
> court's duty to scrutinize the record as a whole to determine whether the
> conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (internal quotations omitted).

Nonetheless, the district court is not "empowered to weigh the evidence or substitute its

conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir.

1992).

### B.  *Establishing a Disability Under the Act*

Plaintiff's eligibility for DIB is governed by 42 U.S.C. § 423.  A claimant is eligible for

DIB if he meets the disability period requirements of 42 U.S.C. § 416(i), and demonstrates that

he is disabled based on an "inability to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

twelve months." 42 U.S.C. § 423(d)(1)(A).  A person is disabled for these purposes if his

physical or mental impairments are "of such severity that he is not only unable to do his previous

work, but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §

423(d)(2)(A).

Social Security regulations set forth a five-step, sequential evaluation procedure to

determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  For the first two steps, the

claimant must establish (1) that he has not engaged in "substantial gainful activity" since the

onset of his alleged disability, and (2) that he suffers from a "severe impairment" or

"combination of impairments."  20 C.F.R. § 404.1520(a)-(c).  The claimant bears the burden of

-8-

establishing these first two requirements, and the failure to meet this burden automatically results in a denial of benefits.  *See Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).

If the claimant satisfies his initial burdens, the third step requires that he provide evidence that his impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments").  20 C.F.R. § 404.1520(d).  If Plaintiff's impairment or combination of impairments meets or equals a listed impairment, he is presumed to be disabled and is automatically entitled to disability benefits.  *Id.*   If he cannot so demonstrate, the benefit eligibility analysis proceeds to steps four and five.

The fourth step of the analysis focuses on whether the claimant's "residual functional capacity" sufficiently permits him to resume his previous employment.  *See* 20 C.F.R. § 404.1520(e).  "Residual functional capacity" is defined as "that which an individual is still able to do despite limitations caused by his or her impairments."  20 C.F.R. § 404.1520(e).  If the claimant is found to be capable of returning to his previous line of work, then he is not "disabled" and not entitled to disability benefits.  20 C.F.R. § 404.1520(e).  Should the claimant be unable to return to his previous work, the analysis proceeds to step five.  To determine the physical exertion requirements of work, jobs are classified as sedentary, light, medium, heavy, and very heavy.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work.  20 C.F.R. § 404.1520(f).  If the Commissioner cannot satisfy this burden, the claimant shall receive social security benefits.  *Yuckert*, 482 U.S. at 146-47 n.5.

**C.  *The ALJ's Decision is Supported by Substantial Evidence***

The ALJ applied the facts from the record to the five-step analysis to conclude that Plaintiff is not entitled to DIB.  Initially, at the first step, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since February 21, 2003, the alleged onset date of his disability.  (R. 26).  At the second step of the analysis, the ALJ noted that the claimant suffered from a back disorder, depression, and an affective disorder.  These conditions limited the claimant's ability to perform basic work-related activities, and therefore the claimant suffered from a "severe" impairment within the meaning of the Act.  (R. 26).

Upon reaching the third step, the claimant may establish "disability" on the basis of medical evidence alone only if the impairments, or combination of impairments, "meet or equal" the criteria set forth in the Listing of Impairments.  *See* 20 C.F.R. § 404.1520(d).  In this case, the ALJ did not find the specific documentation necessary in the record to establish "disability" under the third step.  (R. 26).  Accordingly, the ALJ proceeded to the fourth and fifth steps of the analysis.

In order to determine whether Plaintiff has met the fourth and fifth steps, the ALJ made specific findings, based on the record, of Plaintiff's Residual Functional Capacity ("RFC").  (R. 26-32).  Specifically, the ALJ concluded that Plaintiff

> has the capacity for a full range of light work tasks.  He has no restrictions placed upon him, regarding lifting and carrying, sitting and standing, or walking abilities, because he can occasionally lift and carry 20 pounds, and frequently lift and carry 10 pounds.  He could sit, stand, or walk 6 hours each, out of a normal 8 hour work day.  He can operate an automobile with no restrictions.  He has no atrophy of the upper and lower extremities.  He has no significant functional restrictions, or range of motion problems, and he has full muscle strength in the upper and lower extremities.

(R. 32).  To reach this conclusion, the ALJ considered the "clear and unambiguous implications" to be drawn from the reports of Dr. Kasoff, Dr. Chan, and Dr. Brunner.  (R. 28-30).  In addition,

the ALJ considered Plaintiff's subjective allegations of pain.  (R. 27).  However, the ALJ disregarded reports from Dr. Morris Horwitz and Dr. Ana Miguel Komotar because the reports were "outside the parameters of [Plaintiff's] onset date."  (R. 30).

Considering Plaintiff's RFC at step four, the ALJ determined that Plaintiff could not perform his previous job as a freight truck driver because the job duties were "clearly above the heavy requirement level."  (R. 31).  The ALJ determined that in light of Plaintiff's herniated disc in his cervical spine with fusion surgery, and a herniated disc in the lumbar spine with disc surgery, it is reasonable to conclude that Plaintiff should not lift or carry heavy weights on a regular 8-hour per day basis and probably could not lift or carry medium weights—functions necessary to be employed as a truck driver.  (R. 31).

Ultimately reaching step five, the ALJ found that "[t]here is no indication in the record that the claimant's lifting, sitting, standing, walking abilities have ever been impinged upon below that necessary to perform a full, wide, and complete range of light work tasks."  (R. 31).  Concluding that Plaintiff's RFC permits him to perform light work, the ALJ determined that Grid Rule 202.20 compels a conclusion that Plaintiff is "not disabled."

### 1.    The ALJ Properly Considered Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to give adequate credence to Plaintiff's subjective complaints.  In his decision, the ALJ made specific reference to Plaintiff's allegations regarding his pain and limitations, but found them incredible in light of the objective evidence.  Plaintiff now submits that he did not need to prove objective medical evidence of the pain itself, but, rather, evidence of a condition that could reasonably produce the pain.  In addition, Plaintiff

contends that the ALJ should not have relied on Dr. Kasoff's post-operative report, which found Plaintiff to be recovering well.  Plaintiff argues that Dr. Kasoff's report was self-serving.

As discussed above, 20 C.F.R. § 404.1529 requires that objective medical evidence demonstrate a basis for subjective complaints.  Although pain itself may be a disabling condition, *Tabron v. Harris*, 667 F.2d 412, 415 (3d Cir. 1981), Plaintiff is not required to show objective evidence of the pain itself, but he must provide "objective medical evidence of some condition that could reasonably produce pain[,]" *Hanusiewicz v. Bower*, 678 F.Supp. 474, 477 (D.N.J. 1998) (internal citations omitted).  Complaints about pain or other symptoms alone cannot establish that a claimant is disabled.  *See* 20 C.F.R. § 404.1529(a).  Rather, these complaints must be coupled with objective medical signs and laboratory findings that demonstrate a medical impairment that could reasonably produce the alleged subjective complaints.  *Id.*  Plaintiff bears the burden of demonstrating that these subjective complaints are supported by medical evidence.  *Alexander v. Shalala*, 927 F. Supp. 785, 795 (D.N.J. 1995), *aff'd per curiam*, 85 F.3d 611 (3d Cir. 1996).  It is within the discretion of the ALJ to discount Plaintiff's subjective complaints of pain if there is a rational basis to do so.  *Id.*

The Court finds that the ALJ's evaluation of Plaintiff's subjective complaints of pain and daily limitations was proper and supported by substantial evidence.  *See* 20 C.F.R. 404.1529(c)-(d).  Considering Plaintiff's subjective complaints, the ALJ concluded that Plaintiff's "allegations of continuing neck pain problems" were "simply unsupportable."  (R. 30).  The ALJ first noted that Plaintiff's "statements concerning his impairments and their impact on [his] ability to work are not entirely credible in light of the claimant's own description of his[ ] activities and lifestyle; the degree of medical treatment required; discrepancies between the claimant's assertion and information contained in the documentary reports; the claimant's

-12-

demeanor at hearing; the reports of the treating and examining practitioners; the medical history; the findings made on examination; [and] the claimant's assertions concerning [his] ability to work." (R. 28).

Futhermore, the ALJ stated that he is "skeptical of claimant's allegations of continuing neck pain and upper extremity problems." (R. 30). The ALJ emphasized that Plaintiff's treating neurologist, Dr. Kasoff, indicated that Plaintiff had no problems in January 2004, which was several months after his discectomy and fusion surgery. The neurologist released Plaintiff to return to work without restrictions. At this time, Plaintiff was also able to drive an automobile. In light of this unambiguous information from Dr. Kasoff, the ALJ found Plaintiff's allegations of continuing neck pain problems "simply unsupportable." (R. 30).

The ALJ also noted that, at the hearing, Plaintiff's testimony appeared "overly vague" and needed a "great deal of prompting[ ] from his representative." The ALJ further determined that Plaintiff's activities of daily living did not indicate any restriction because he could cook and do housework without any difficulty. (R. 30). Ultimately, the ALJ determined that Plaintiff's "physical assertions and functional restrictions as alleged, are inconsistent with the objective physical findings summarized and described in the file reviewed above." (R. 30). For those reasons, the ALJ found that Plaintiff's allegations of pain were "without a scintilla of credibility." (R. 31).

Upon review of the record, the Court finds that the ALJ gave significant consideration to Plainitff's subjective complaints, and ultimately found them to be without merit. The objective medical evidence does not support the existence of a condition that could reasonably produce pain or Plaintiff's claims as to the severity of the pain. Moreover, the Court rejects Plaintiff's assertion that Dr. Kasoff's statements were self-serving. The ALJ properly explained the

grounds for these findings.  Thus, the Court finds no reason to reverse the decision on the basis

that the ALJ failed to consider Plaintiff's subjective complaints.

> **2.      The ALJ Properly Considered the Combination of Plaintiff's
> Impairments**

Plaintiff further alleges that rather than taking into account the combination of

impairments that resulted from Plaintiff's 1997 lower back surgery and his 2003 cervical

surgery, the ALJ instead concentrated "almost entirely on the surgery to the upper part of the

claimant's spine."  (Pl. Br. 24).  Plaintiff also alleges that the ALJ "seems to have thoroughly

discounted the possibility, as testified to by the claimant, that his complaints with respect to his

low back had gotten much worse since his low back surgery."  (*Id.*).

The ALJ properly disregarded Plaintiff's complaints as to his previous knee and lower

back injuries, and the reports by Doctors Horwitz and Komotar.  Plaintiff sustained those injuries

in 1987 and 1997, respectively, 16 and 6 years prior to Plaintiff's disability onset date.  Indeed,

Plaintiff was able to continue working as a truck driver following those injuries, from which, as

indicated by the medical evidence provided in the record, Plaintiff recovered well.

Furthermore, even if the ALJ had considered the injuries sustained prior to the onset date,

the ALJ determined that the record "does not contain the specific documentation necessary to

presumptively establish 'disability' under the third step of the sequential evaluation process."

(R. 26).  To presumptively establish disability under step three, Plaintiff must meet or equal one

of the impairments listed in Appendix 1.  If none of Plaintiff's impairments meet a listed

impairment, then the ALJ must consider the combined effect of all of Plaintiff's impairments to

determine whether "disability" may be established on the basis of medical evidence alone.

*Cadillac v. Barnhart*, 84 Fed. Appx. 163, 167 (3d Cir. 2003).

Although Plaintiff does not provide the Court with an explanation as to which Appendix 1 impairment Plaintiff allegedly meets or equals, the Court reasons that Plaintiff is alleging a musculoskeletal injury.  To qualify for disability due to musculoskeletal injury, a plaintiff must allege loss of function.  In this listing, "loss of function" is defined as the

> inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment, or the inability to perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment.  The inability to ambulate effectively or the inability to perform fine and gross movements effectively must have lasted, or be expected to last, for at least 12 months.  For the purposes of these criteria, consideration of the ability to perform these activities must be from a physical standpoint alone.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

The record makes clear that Plaintiff's combination of injuries does not cause him to meet or equal a musculoskeletal injury as defined in Appendix 1.  Appendix 1 specifically requires that in order for a claimant to have a "loss of function" the claimant must be unable to ambulate on a sustained basis.  However, the record indicates that Plaintiff could sufficiently ambulate.

Dr. Bagner noted on April 8, 2004 that Plaintiff ambulated without difficulty, got on and off the examination table without difficulty, dressed and undressed himself without assistance, and was not uncomfortable in the seated position during the interview.  (R. 166).  Dr. Kasoff, Plaintiff's treating physician, described Plaintiff as "doing beautifully" and "completely comfortable."  (R. 378).  In addition, Plaintiff himself told Dr. Brunner on November 22, 2004 that on a daily basis he is able to "cook and prepare food" and that he spends his days "doing chores."  (R. 181).  A similar report was given to Dr. Chan on the same date.

The objective medical testimony establishes that Plaintiff does not have difficulty ambulating, and thus disability cannot be established at step three.  The Court finds that the ALJ properly considered the combination of injuries at step three and was correct in finding that they do not meet or equal an Appendix 1 impairment.  The ALJ was correct to proceed to steps four and five, at which the ALJ appropriately found Plaintiff's RFC sufficient to permit Plaintiff to perform light work.

## III.   CONCLUSION

For the reasons expressed above, the Court affirms the Commissioner's decision, as it is supported by substantial evidence in the record.  An appropriate order follows this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: August 4, 2008

-16-